## John S. Jenness & *al. versus* John Lane & *al.*

If the holder of a note, then due and payable, take a new note for a less sum, whereon the same person only is liable, payable in thirty days, and agree, that if the smaller note shall be paid at maturity, the maker shall be discharged from his liability on the larger one, the contract cannot be enforced for want of consideration; but should another person be also liable on the smaller note, as indorser thereof, the contract would have sufficient consideration to support it, and would be binding.

Where such contract is made for a sufficient consideration, and is a valid contract, still it does not of itself, at the time it is made, operate as a payment of the larger note, or discharge the payee from his liability thereon; but to make out a defence to a suit upon that note, it must be made to appear, that the smaller note was paid, or payment thereof tendered, at the time it became payable, or that payment was prevented by the wrong of the holder, or that he has adopted the new note in discharge of the old one.

Such payment *at the time the new note became payable,* is not waived or excused, if the holder, being the whole time an inhabitant of another State, takes the new note with him to his place of residence; nor if he omits to make a demand and notify the indorser; nor if he does not notify the payee, that he elects to rely on payment of the old note; nor if he omits to return or offer the new note to the payee, until the time of trial.

Assumpsit on a note dated at Bangor, Jan. 29, 1839, for $202, payable at the Suffolk Bank, Boston, in sixty days, given by the defendants, Lane & Sandford, to Joshua Lane, or order, and by him indorsed to the plaintiffs, Jenness & Lane.

At the trial before Shepley J. the defendants offered in evidence a receipt, a copy of which follows : —

"Bangor, Aug. 22, 1840. Received of John Lane his note for fifty-three dollars twenty-seven cents, indorsed D. Mossman, dated this day, at thirty days; now it is agreed, that if this note is paid at maturity, the said Lane is to be discharged from his liability on note to Jenness & Lane dated Jan. 29, 1839, for two hundred dollars at sixty days.

"John S. Jenness, for late firm of Jenness & Lane."

The defendants also introduced the depositions of Hollis Bowman and David Mossman. The contents of these depositions sufficiently appear in the opinion of the Court.

Mossman was never notified as indorser of the note for

$53,27, mentioned in the receipt, and at the trial, this note was produced by the plaintiffs, and filed in the case. On Jan. 22, 1845, at Bangor, John Lane tendered to John S. Jenness, one of the plaintiffs, whose residence was at Boston, but who was then at Bangor, a sum of money, said by him to be $68,43, in payment " of a note to Mr. Jenness," for $53,27. Lane asked Jenness, if he would count the money, and he replied that he would not, and, in the language of the witness, " Jenness refused to receive the money, and said he had no such note against Mr. Lane." There was no other evidence as to what had been done with that note.

The presiding Judge ruled, that upon the evidence, which was all on paper, a defence was not made out. A default was then entered by consent, to be taken off, if in the opinion of the Court the ruling was erroneous.

*Bourne* argued for the defendants.

1. The compromise of the note in suit, if the defendants were insolvent, by giving a negotiable security with a good and sufficient indorser, was a valid contract, binding on the plaintiffs, and founded on a good consideration. 11 East, 390 ; 8 Taunt. 277 ; 2 Maule & S. 121 ; *Boyd* v. *Hitchcock*, 20 Johns. R. 76 ; *Colburn* v. *Gould*, 1 N. H. Rep. 279 ; *Brooks* v. *White*, 2 Metc. 283 ; *Brown* v. *Stackpole*, 9 N. H. Rep. 478.

2. The defendants have the right to prove by parol testimony, that the compromise note was payable in Bangor. The presumption is, that the maker contemplated paying the note where it is dated, no other place being stated. 3 Kent, 96 ; 4 Johns. R. 288 ; 1 Peters, 89 ; 4 Law Reporter, 68.

3. If the plaintiffs carried the compromise note out of the State, the defendants were not bound to pursue them there to tender the amount ; and in such case no tender is necessary. 5 Bac. Abr. 6 ; 1 Co. Lit. 210 ; 2 M. & S. 120 ; 6 Wharton, 331 ; Chitty on Con. 728, note ; 9 Wheat. 598 ; 6 Metc. 290 ; 8 N. H. Rep. 413.

4. If so carried out of the State, the readiness to pay the note at Bangor, on the day of its maturity, is equivalent to a

Jenness v. Lane.

tender; and the tender of debt and interest to Jenness the first time he came into the State is equivalent to a tender on the day of its maturity, and an estoppel to any suit on the original note. *Otis* v. *Barton*, 10 N. H. Rep. 433 ; *McKenny* v. *Whipple*, 21 Maine R. 98; 2 Saund. 48; Jacob's Law Dic. Bond ; 2 M. & S. 120; *Brinley* v. *Tibbets*, 7 Greenl. 70; *Brown* v. *Stackpole*, 9 N. H. Rep. 478; Willes, 108; 17 Maine R. 45 ; 18 Maine R. 55 ; Cro. Eliz. 755.

5. The keeping of the compromise note, after arriving at maturity, and from that time to the time of trial, more than six years, without notifying the defendant of a repudiation or rescinding of the compromise contract, is presumptive evidence, either of a waiver as to the time of payment, or of a determination to abide still by the compromise contract. 6 Hammond, 171 ; *Coolidge* v. *Brigham*, 1 Metc. 547 ; Long on Sales, 239 ; *Ayers* v. *Hewett*, 19 Maine R. 281 ; *Cushman* v. *Marshall*, 19 Maine R. 122 ; 5 S. & R. 323; *Roberts* v. *Marston*, 20 Maine R. 275; 4 B. & Cr. 513; 5 Johns. R. 71 ; 9 Metc. 42.

6. The transferring of the compromise note at any time after maturity, is such a user of it, as to determine the election of the plaintiffs to look to that note for their pay. *Harris* v. *Johnson*, 3 Cranch, 318; 5 T. R. 513; *Chase* v. *Bradley*, 17 Maine R. 89.

7. If the plaintiff did any act to prevent the defendants from paying the note at maturity, such prevention excuses payment till removed. *Borden* v. *Borden*, 5 Mass. R. 67 ; *Williams* v. *Bank U. S.* 2 Peters, 102.

8. The plaintiffs, having taken a negotiable security in satisfaction of their debt, were bound to demand the same of the acceptor, or indorser, and to exhaust the remedies provided for them by the compromise note before they could be remitted to their original demand. 8 Taunt. 277 ; 1 Cranch, 181 ; 3 Johns. R. 230; 1 Cowen, 713; 23 Wend. 346 ; 7 N. H. Rep. 205; 11 East, 390; 9 N. H. Rep. 478.

9. To avoid circuity of action the payment of the compromise note is a discharge from the original note. *Trevet* v. *Aggas*, Willes, 108.

*Appleton*, for the plaintiff, said that the most that could be made of the case for the defendant was an accord without satisfaction ; and that is no extinguishment of the original contract. Chitty on Con. 760 ; Com. Dig. Accord. B. 4 ; 2 M. & S. 121 ; 5 N. H. Rep. 136 ; 9 Coke, 79 ; 2 H. Bl. 317 ; 5 Pick. 44 ; 17 Mass. R. 583. And the payment should have been made at the time. Even the payment of a lesser sum after the time, would·not extinguish the original contract. 5 East, 230 ; 5 Metc. 283 ; 2 Johns. R. 448 ; 3 N. H. Rep. 518 ; 4 Greenl. 428.

The payment of the fifty-three dollar note, at the time it became payable, was a condition precedent, and the contract must have been strictly performed, in order that .it should furnish any defence.

As no place of payment was mentioned in the note, it was to be paid at the place of residence of the payee. 24 Pick. 168 ; 8 N. H. Rep. 413 ; 10 N. H. Rep. 433. · The tender, therefore, at Bangor, if it had been legally made and in due time, would not have aided the defendants.

But there is no proof of any legal tender at any time or place. 5 N. H. Rep. 440.

The note was of no value whatever, after the time of payment had elapsed, and no payment, or offer of payment, had been made. It was soon enough to have delivered it when demanded, or to produce it at the trial. 8 Metc. 227.

It is needless to inquire, what would have been the effect of negotiating the note, as it.was never negotiated.

The opinion of the Court was drawn up by

Tenney J. — On August 22, 1840, the plaintiffs, residing in Boston, held the note of the defendants, indorsed by one Joshua Lane, for the sum of $202, payable at the Suffolk Bank in Boston, which had long been overdue; on that day a note was received by one of the plaintiffs, in the following terms, viz : — " Bangor, Me. Aug. 22, 1840. Thirty days after date, value received I promise to pay to the order of D. Mossman & Co. 53, and $\frac{27}{100}$ dollars," signed by one of the de-

fendants and indorsed by David Mossman & Co. and at the same time it was agreed in writing on the part of the plaintiffs, that if the new note should be paid at maturity, the signer thereof should be discharged from his liability on the other note. No evidence was offered of any ageement, that payment of the latter note should be made at a place different from that fixed by law, arising from its terms; though Mossman testified, that he considered such a note payable at the place of its date. It does not appear, that the defendants made any attempt to pay the new note, when it became payable, or were in readiness so to do, if called upon ; one of the firm, however, who indorsed it, testified, that he was not notified of its dishonor, but if he had been so notified, he should have paid it. Evidence was introduced, of a tender of specie, made by the maker of the last note, at Bangor, on January 22, 1845, to take it up, declared by him to be a sum, which was equal to the principal and interest, to one of the plaintiffs, who refused to receive or to count it, saying he had no such note. The present suit is brought upon the note first given by the defendants, and they contend that the suit cannot be maintained.

The last note, though for a sum less than that, for which the defendants were previously holden, was against another party ; and the contract modifying the time of payment and the amount to be paid, upon the performance of a condition, was upon sufficient consideration, and binding according to its import. The agreement of the plaintiff, that if the defendants should pay a sum of money less than that then due, in thirty days, he should be discharged from further liability, and nothing further was contained in the contract, it could not be enforced against the plaintiffs, there being no consideration therefor. It was necessary, therefore, that there should be some promise or contract from the other party, to render the plaintiff's conditional promise binding. The purpose of the maker of the new note was to obtain the other at a discount, and his own conditional promise alone, created no legal obligation in the plaintiffs, inasmuch as they then had the absolute

promise of him and others for a greater sum ; but the obtaining a party not before liable would give validity to the plaintiffs' contract, and the form of a note, it seems, was adopted to carry into effect, in a legal manner, the intention of those interested in the arrangement.

It cannot be, and is not contended, that the agreement entered into on Aug. 22, 1840, of itself discharged the defendants from their previous indebtedness.  The former note was outstanding and the maker of the new note was still liable on his original promise, the obligation of which would cease only by the payment of the new note, or by some act of the plaintiffs, which would substitute it for their former claim.  To make out the defence, it must be shown, that the condition in the agreement of the 22d Aug. 1840, was performed, or that its performance was prevented by the wrong of the plaintiffs, or that they have adopted the new note in discharge of the old note.  It is not contended that John Lane paid his note on the 22d of Aug. 1840, but it is insisted, that the facts, that it was carried out of the State, and that one of the firm, who indorsed it would have paid it at maturity, if he had been notified of its dishonor by the maker, were equivalent to a tender on the day of payment.

" All debts between the original parties are payable everywhere unless some special provision to the contrary be made ; and therefore the rule is, that debts have no *situs* but accompany the creditor everywhere."   " A negotiable note made payable generally, without any specification of place, is a contract to pay at any place, where it is negotiated, so as to be deemed a contract of that place and governed by its laws."   It creates a debt payable any where by the very nature of the contract, and it is a promise to whomsoever shall be the holder.   Story's Con. Laws, § 317 ; *Braynard* v. *Marshall*, 8 Pick. 194.

The firm whose name is upon the note of 22d of August, 1840, cannot be regarded as original promisors upon it, but are indorsers and only conditionally liable.  If the plaintiffs had wished to avail themselves of the new contract, they could have done so against all the parties, whether maker or

indorsers, or against the one or the other. The indorsers were discharged from all liability by the omission to make a demand upon the maker, and give notice of the dishonor to them ; they have no cause of complaint for this omission as they have suffered and can suffer nothing thereby. The liability of the maker was not affected by the discharge of the indorsers to his prejudice. The plaintiffs therefore were under no obligation to take the steps to render the indorsers' liability absolute. If the evidence authorized the conclusion, that the indorsers were in readiness to pay the note at maturity, had they received notice of its non-payment, there is nothing showing that this was by the maker's procurement, and could not avail him in his defence, even if the note was improperly carried out of the State. But the case finds, that the residence of the plaintiffs was in Boston, where the first note was payable, and it was there that it must have been expected to be paid. It cannot be well doubted from the terms used in the new note and agreement, and the omission therein of any specific place of payment, that the new note would be carried by the one who received it to Boston, whenever he should go there, and that it was so understood by both parties ; indeed the only proof that it was in fact carried out of the State is an inference from the evidence, that the plaintiffs resided in Boston, for there is no direct evidence upon the point. If the plaintiffs had taken the note of the 22d August, 1840, in discharge of the former, instead of annexing to its receipt a condition, and a suit had been brought thereon, after its maturity, against the maker, no fact introduced in evidence here could have operated as a defence to such suit ; the note being in Boston at its maturity, and the indorsers, whom the plaintiffs took no measures to hold liable, being ready and willing to pay the note had they been notified, that the maker had failed to make payment on demand, could not have prevented a recovery. Consequently the same facts, do not dispense with the necessity of a literal fulfilment of the condition, or a legal offer to do so, at the time specified in the agreement of August 22d, 1840.

It is insisted, that the failure of the plaintiffs to notify the defendants, that they should rely upon the old note, raises a presumption, that he waived the time of payment of the new note; or that he elected to abide by the new arrangement. The agreement of Aug. 22, 1840, was executory. Either party could take the steps necessary to carry it into effect. If nothing was done by either to make it available, it ceased to be operative, and both would be restored to the condition in which they were previously. The maker of the note could have made payment at the time mentioned, or made a tender of the amount, and kept it good, and his former liability would be discharged. The plaintiffs, could have substituted the new for the old note, if they had preferred to have done so. The defendants' liability on the old note could be discharged at their option only by the payment of the new note, at maturity, or the entire payment of the other before the trial of the action brought thereon. The original liability was to cease, not upon the failure of the plaintiffs to give notice, that they should rely on the first note, but solely upon the fulfilment of the condition in the new contract. And unless this condition was literally performed, all right to enforce payment of the old note was restored. It was still at the election of the plaintiffs to rely upon the new note, notwithstanding the maker thereof could not compel them to do so. There is no evidence in the case tending to show, that they had made the election to make absolutely the substitution, but the omission to secure the liability of the indorsers, is some evidence of a contrary intention.

If the plaintiffs had actually transferred the note last received, it might have been an adoption thereof, and a discharge of the maker's former indebtedness; but there is no evidence of such transfer; the only proof relied upon, on this point, is the refusal of one of the plaintiffs to receive the money tendered in January, 1845, with the declaration that he had no such note; this declaration might have been evidence of various intentions of the one who made it, but could not have

Jenness v. Lane.

been sufficient to present the question to the jury, whether the note referred to, had been adopted and sold to another.

It is contended that negotiable security, having been taken by the plaintiffs, which was to be satisfaction of the debt, if paid, imposed upon the plaintiffs the duty of taking steps to hold the indorsers, before they could resort to an action upon the original claim ; and that this was necessary also to prevent circuity of action. If the plaintiffs had received as collateral security, a note which was valuable to the other party, it would have been incumbent on them, to take all the measures necessary to prevent a discharge of the parties, who could be liable to the one, from whom they received it. But this is not required, when the defendants could in no manner be prejudiced by the omission. We have seen that a demand upon the maker, and notice to the indorsers of the note of Aug. 22, 1840, could not have benefitted the maker in any event, and the law requires no useless ceremony. Neither was it necessary for the plaintiffs to return the new note, before the action upon the former was commenced ; its retention by them gave them no advantage, nor was it injurious to the maker of it. It was filed in Court, after a tender to him, which prevents any exposure to risk, that he may be called upon by a stranger to this suit for payment. Thurston v. Blanchard, 22 Pick. 18 ; Ayers v. Hewett, 19 Maine R. 281.

No evidence was adduced, showing any neglect of duty in the plaintiffs, or any act of theirs injurious to the defendants, which could create a liability ; and there can be no circuity of action, when one party only is exposed to a suit.

Default to stand.